FILED

APR 2 6 2021

MARY C. LOEWENGUTH, CLERK
WESTERN DISTRICT OF NY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

GARY C.,

               Plaintiff,

    -v-

COMMISSIONER OF SOCIAL SECURITY,

               Defendant.
_____

20-CV-00426-MJR
DECISION AND ORDER

Pursuant to 28 U.S.C. §636(c), the parties consented to have a United States Magistrate Judge conduct all proceedings in this case. (Dkt. No. 19)

Plaintiff Gary C.[1] ("Plaintiff") brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "defendant") denying his application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") pursuant to the Social Security Act (the "Act"). Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the following reasons, Plaintiff's motion (Dkt. No. 15) is granted, defendant's motion (Dkt. No. 17) is denied, and the case is remanded for further administrative proceedings.

---

[1] In accordance with the District's November 18, 2020, Standing Order, plaintiff is identified by first name and last initial.

## BACKGROUND[2]

Plaintiff filed protectively for DIB on January 25, 2017 and for SSI on January 26, 2017, alleging a disability onset date of November 23, 2016. (Administrative Transcript ["Tr."] 210-19). The applications were initially denied on March 22, 2017. (Tr. 121-38). Plaintiff timely filed a request for an administrative hearing. (Tr. 153-66). On October 12, 2018, Administrative Law Judge ("ALJ") Brian LeCours held a video hearing from Albany, New York. (Tr. 84-120). Plaintiff appeared in Buffalo, New York with his attorney. A vocational expert also testified. Prior to the hearing, Plaintiff amended his original alleged disability onset date to an earlier date, March 31, 2014, and in light of subsequent work activity, he requested two discrete periods of disability: from March 31, 2014 through July 10, 2015, and then from April 1, 2016 through the present. (Tr. 11).

The ALJ issued an unfavorable decision on January 10, 2019. (Tr. 8-26). On February 11, 2020, the Appeals Council denied Plaintiff's request for review. (Tr. 1-7). This action followed.

## DISCUSSION

I.    *Scope of Judicial Review*

The Court's review of the Commissioner's decision is deferential. Under the Act, the Commissioner's factual determinations "shall be conclusive" so long as they are "supported by substantial evidence," 42 U.S.C. §405(g), that is, supported by "such relevant evidence as a reasonable mind might accept as adequate to support [the]

---

[2] The Court presumes the parties' familiarity with Plaintiff's medical history, which is summarized in the moving papers.

conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted). "The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts." *Smith v. Colvin*, 17 F. Supp. 3d 260, 264 (W.D.N.Y. 2014). "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force," the Court may "not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002). Thus, the Court's task is to ask "'whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached' by the Commissioner." *Silvers v. Colvin*, 67 F. Supp. 3d 570, 574 (W.D.N.Y. 2014) (quoting *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).

Two related rules follow from the Act's standard of review. The first is that "[i]t is the function of the [Commissioner], not [the Court], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983). The second rule is that "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." *Veino*, 312 F.3d at 588. While the applicable standard of review is deferential, this does not mean that the Commissioner's decision is presumptively correct. The Commissioner's decision is, as described above, subject to remand or reversal if the factual conclusions on which it is based are not supported by substantial evidence. Further, the Commissioner's factual conclusions must be applied to the correct legal standard. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008). Failure to apply the correct legal standard is reversible error. *Id.*

II.    *Standards for Determining "Disability" Under the Act*

A "disability" is an inability "to engage in any substantial gainful activity by reason

of any medically determinable physical or mental impairment which can be expected to

result in death or which has lasted or can be expected to last for a continuous period of

not less than twelve (12) months."    42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A).    The

Commissioner may find the claimant disabled "only if his physical or mental impairment

or impairments are of such severity that he is not only unable to do his previous work but

cannot, considering his age, education, and work experience, engage in any other kind

of substantial gainful work which exists in the national economy, regardless of whether

such work exists in the immediate area in which he lives, or whether a specific job vacancy

exists for him, or whether he would be hired if he applied for work."    *Id.* §§423(d)(2)(A),

1382c(a)(3)(B).  The Commissioner must make these determinations based on "objective

medical facts, diagnoses or medical opinions based on these facts, subjective evidence

of pain or disability, and . . . [the claimant's] educational background, age, and work

experience."  *Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir. 1983) (first alteration in

original) (quoting *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)).

To guide the assessment of whether a claimant is disabled, the Commissioner has

promulgated a "five-step sequential evaluation process."  20 C.F.R. §§404.1520(a)(4),

416.920(a)(4).  First, the Commissioner determines whether the claimant is "working" and

whether that work "is substantial gainful activity."  *Id.* §§404.1520(b), 416.920(b).  If the

claimant is engaged in substantial gainful activity, the claimant is "not disabled regardless

of [his or her] medical condition or . . . age, education, and work experience."  *Id.*

§§404.1520(b), 416.920(b).  Second, if the claimant is not engaged in substantial gainful

activity, the Commissioner asks whether the claimant has a "severe impairment." *Id.* §§404.1520(c), 416.920(c). To make this determination, the Commissioner asks whether the claimant has "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* §§404.1520(c), 416.920(c). As with the first step, if the claimant does not have a severe impairment, he or she is not disabled regardless of any other factors or considerations. *Id.* §§404.1520(c), 416.920(c). Third, if the claimant does have a severe impairment, the Commissioner asks two additional questions: first, whether that severe impairment meets the Act's duration requirement, and second, whether the severe impairment is either listed in Appendix 1 of the Commissioner's regulations or is "equal to" an impairment listed in Appendix 1. *Id.* §§404.1520(d), 416.920(d). If the claimant satisfies both requirements of step three, the Commissioner will find that he or she is disabled without regard to his or her age, education, and work experience. *Id.* §§404.1520(d), 416.920(d).

If the claimant does not have the severe impairment required by step three, the Commissioner's analysis proceeds to steps four and five. Before doing so, the Commissioner must "assess and make a finding about [the claimant's] residual functional capacity ["RFC"] based on all the relevant medical and other evidence" in the record. *Id.* §§404.1520(e), 416.920(e). RFC "is the most [the claimant] can still do despite [his or her] limitations." *Id.* §§404.1545(a)(1), 416.945(a)(1). The Commissioner's assessment of the claimant's RFC is then applied at steps four and five. At step four, the Commissioner "compare[s] [the] residual functional capacity assessment . . . with the physical and mental demands of [the claimant's] past relevant work." *Id.* §§404.1520(f), 416.920(f). If, based on that comparison, the claimant is able to perform his or her past

relevant work, the Commissioner will find that the claimant is not disabled within the meaning of the Act. *Id.* §§404.1520(f), 416.920(f). Finally, if the claimant cannot perform his or her past relevant work or does not have any past relevant work, then at the fifth step the Commissioner considers whether, based on the claimant's RFC, age, education, and work experience, the claimant "can make an adjustment to other work." *Id.* §§404.1520(g)(1), 416.920(g)(1). If the claimant can adjust to other work, he or she is not disabled. *Id.* §§404.1520(g)(1), 416.920(g)(1). If, however, the claimant cannot adjust to other work, he or she is disabled within the meaning of the Act. *Id.* §§404.1520(g)(1), 416.920(g)(1).

The burden through steps one through four described above rests on the claimant. If the claimant carries his burden through the first four steps, "the burden then shifts to the [Commissioner] to show there is other gainful work in the national economy which the claimant could perform." *Carroll*, 705 F.2d at 642.

III.    *The ALJ's Decision*

At step one, the ALJ found Plaintiff engaged in substantial gainful activity from July 2015 to April 2016, but further found that there has been a continuous 12-month period(s) during which the claimant did not engage in substantial gainful activity. (Tr. 14). At step two, the ALJ found that Plaintiff had the following severe impairments: left lower extremity deep venous thrombosis and arthropathy status post multiple surgeries. *Id.* At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 15-16). Prior to proceeding to step four, the ALJ determined that Plaintiff retained the RFC "to perform sedentary work . . . except that he can occasionally

- 6 -

operate foot controls with the left lower extremity and occasionally climb ladders/ropes/scaffolds." (Tr. 16-19).

At step four, the ALJ found that Plaintiff has no past relevant work. (Tr. 19)

At step five, the ALJ found Plaintiff capable of performing jobs that exist in significant numbers in the national economy. (Tr. 20). Accordingly, the ALJ determined that Plaintiff has not been under a disability from November 23, 2016, through the date of the decision. *Id.*

IV.   *Plaintiff's Challenge*

Plaintiff argues that the ALJ erred by failing to evaluate properly the medical opinion of Plaintiff's treating orthopedic specialist, Dr. Bernhard Rohrbacher, and that the case must therefore be remanded. The Court agrees.

If an ALJ decides that the opinion of a treating physician is not entitled to controlling weight, he or she must determine how much weight, if any, to give it. In doing so, the ALJ must "explicitly consider" the following factors (the so-called *Burgess* factors): "(1) the frequen[cy], length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." *Estrella v. Berryhill*, 925 F.3d 90, 95-96 (2d Cir. 2019) (*per curiam*) (internal quotations and citations omitted). The ALJ must give "good reasons" for the weight given to the treating physician's opinion. *Id.* at 96 (internal quotations and citations omitted). An ALJ's failure to "explicitly" apply these factors is a procedural error, and such error is not harmless, unless "a searching review of the record" shows "that the substance of the treating physician rule was not traversed[.]" *Id.* (internal quotations and citations omitted).

The Second Circuit has reiterated the importance of explicitly applying the *Burgess* factors since deciding *Estrella*. In *Ferraro v. Saul*, 806 F. App'x 13 (2d Cir. 2020), the Circuit repeated that when evaluating the opinion of a treating physician, an ALJ must "explicitly consider" the *Burgess* factors. *Id*. at 14 (quoting *Estrella*, 925 F.3d at 95-96). The Court went on to explain that "merely acknowledging the existence of treatment relationships is not the same as explicitly considering 'the frequency, length, nature, and extent of the treatment.'" *Id*. at 15.

Here, Plaintiff's treating physician, Dr. Rohrbacher, an orthopedic specialist at ECMC Orthopaedics, began treating Plaintiff for his left ankle posttraumatic arthritis on February 17, 2016. (Tr. 544). He continued to treat Plaintiff throughout the relevant period and performed the various surgeries done to Plaintiff's ankle since 2016. (Tr. 542-543, 544, 552-553, 870-873, 926-928, 941-942, 944-945, 946-948, 949-951, 953-975).

On October 26, 2018, Dr. Rohrbacher and a treating physician's assistant completed a physical RFC questionnaire for Plaintiff. (Tr. 909-913). They opined that Plaintiff has numerous exertional limitations, including not be able to lift and carry even 10 pounds and having to be absent from work more than four days per month.

Instead of giving controlling weight to Dr. Rohrbacher's opinion, the ALJ gave it "some though not great weight." (Tr. 18). While the ALJ adopted some of the limitations opined by Dr. Rohrbacher, he rejected others. In particular, he rejected the limitation that Plaintiff would be absent from work more than four days a week, stating that such a limitation is "frankly preposterous," because Plaintiff had not undergone treatment for over a year and was not compliant when he was undergoing treatment. The ALJ also rejected Dr. Rohrbacher's opinion that Plaintiff cannot lift and carry even 10 pounds, because Dr.

Rohrbacher did not explain why "an impairment to one extremity would result in such a limitation[.]"

The ALJ's weighing of the treating physician's opinion is problematic and flawed for several reasons. First, the ALJ failed to expressly consider the *Burgess* facts when rejecting Dr. Rohrbacker's opinion. He did not expressly consider the frequency of Dr. Rohrbacher's examinations of Plaintiff and the length, nature, and extent of the treatment relationship between Dr. Rohrbacher and Plaintiff. The record indicates that Dr. Rohrbacher, an orthopedic specialist, began treating Plaintiff for his left ankle posttraumatic arthritis on February 17, 2016. He continued to treat Plaintiff throughout the relevant period and performed the various surgeries done to Plaintiff's ankle since 2016. The failure to expressly consider the *Burgess* factors was procedural error.

Further, the ALJ's evaluation of Dr. Rohrbacher's treating opinion was inadequate because he did not sufficiently articulate good reasons for giving the opinion only some weight. *See Webb v. Colvin,* No. 12-CV-753S, 2013 WL 5347563, at *6 (W.D.N.Y. Sept. 23, 2013). In rejecting portions of the opinion, the ALJ merely stated that the opinion was not supported by the treatment notes, without citing to the record. This was not sufficient. *See Ely v. Colvin,* No. 14-CV-6641P, 2016 WL 315980, at *4 (W.D.N.Y. Jan. 27, 2016); *see also Marchetti v. Colvin*, 2014 WL 7359158, *13 (E.D.N.Y. 2014); *Ashley v. Comm'r of Soc. Sec.*, 2014 WL 7409594, *2 (N.D.N.Y. 2014); *Crossman v. Astrue*, 783 F. Supp. 2d 300, 308 (D. Conn. 2010).

The ALJ basically "cherry-picked" Dr. Rohrbacher's opinion–giving some of the opinion, the portion consistent with sedentary work, significant weight, and giving the other portion of the opinion, the portion consistent with a finding that Plaintiff was disabled,

only some weight without sound reasoning to justify his actions.  (Tr. 18).  This was error warranting remand.  *Younes v. Colvin,* No. 14-cv-170, 2015 WL 1524417, *8 (N.D.N.Y. Apr. 2, 2015); (although an ALJ is free to credit only a portion of a medical opinion, 'when doing so smacks of 'cherry picking' of evidence supporting a finding while rejecting contrary evidence from the same source, an administrative law judge must have a sound reason for weighting portions of the same-source opinions differently'); *Phelps v. Colvin,* No. 12-cv-976, 2014 WL 122189, *4 (W.D.N.Y. Jan. 13, 2014) ('The selective adoption of only the least supportive portions of a medical source's statements is not permissible') (*internal quotations and brackets omitted*); *Caternolo v. Astrue,* No. 11-cv-6601, 2013 WL 1819264, at *9 (W.D.N.Y. Apr. 29, 2013) ('[I]t is a fundamental tenet of Social Security law that an ALJ cannot pick and choose only parts of a medical opinion that support his determination.') (*internal quotations omitted*) (*collecting cases*); *Searles v. Astrue,* No. 09-cv-6117, 2010 WL 2998676, at *4 (W.D.N.Y. July 27, 2010) ('An ALJ may not credit some of a doctor's findings while ignoring other significant deficits that the doctor identified.')." *DiFrancesco v. Commissioner of Social Security,* No. 18-CV-376-FPG, 2020 WL 467720, at *2 (W.D.N.Y. Jan. 29, 2020); *Mack v. Comm'r of Soc. Sec.,* No. 17-CV-991, 2019 WL 2529386, at *5 (W.D.N.Y. June 19, 2019) ("Remand is especially appropriate … ALJ gave … opinions 'considerable weight,' but failed to provide an explanation for not incorporating into the RFC their sitting limitations, especially because those limitations if incorporated could support a finding of disability.").

Particularly problematic is the ALJ's rejection of Dr. Rohrbacher's opinion that Plaintiff will be absent from work more than four days per month, which if adopted would

have been a disabling limitation.[3]   (Tr. 115-16).   The ALJ stated that the limitation is

"preposterous" because Plaintiff went a year without treatment, which the ALJ failed to

identify, and because Plaintiff was non-compliant with treatment recommendations even

when undergoing treatment, which, again, the ALJ failed to identify.   (Tr. 18).   It is well

settled that "the ALJ cannot arbitrarily substitute his own judgment for competent medical

opinion.... [W]hile an [ALJ] is free to resolve issues of credibility as to lay testimony or to

choose between properly submitted medical opinions, he is not free to set his own

expertise against that of a physician who [submitted an opinion to or] testified before him."

*Balsamo v. Chater,* 142 F.3d 75, 81 (2d Cir. 1998); *McBrayer v. Secretary of Health and*

*Human Servs.,* 712 F.2d 795, 799 (2d Cir.1983) (internal quotation marks and citations

omitted); *see also Filocomo v. Chater,* 944 F.Supp. 165, 170 (E.D.N.Y.1996) ("In the

absence of supporting expert medical opinion, the ALJ should not have engaged in his

own evaluations of the medical findings).   The ALJ was not free to simply substitute his

opinion for that of Dr. Rohrbacher.

What the ALJ should have done was to contact Dr Rohrbacher for further

explanation of this limitation. "'The law is clear beyond cavil that where, as here, a treating

physician's opinion is found by the ALJ to be vague or unclear, it is incumbent on the ALJ

to recontact the treating physician for clarification of his or her opinion.   *Heidrick v.*

*Berryhill,* 312 F. Supp. 3d 371, 374 (W.D.N.Y. 2018) (*quoting Isernia v. Colvin,* No. 14-

CV-2528(JEB), 2015 WL 5567113 at *10 (E.D.N.Y. Sept. 22, 2015) ); *see also Delgado*

*v. Berryhill,* No. 3:17-CV-54(JCH) 2018 WL 1316198 at *11-12 (D. Conn. Mar. 14, 2018)

(rather than rejecting a treating physician's opinion for vagueness, the ALJ should have

---

[3] Defendant does not appear to address this issue in his motion.

recontacted the physician)." *Scott v. Berryhill,* No. 1:17-CV-00468-MAT, 2018 WL 4442882, at *4 (W.D.N.Y. Sept. 17, 2018).

The same is true for the ALJ's rejection of Dr. Rohrbacher's opinion that Plaintiff cannot lift and carry even 10 pounds.  The ALJ stated that he would not adopt that limitation because there was no explanation as to why a lower extremity impairment would result in such a limitation.  (Tr. 18).  Again, the ALJ is not a medical professional, so if he had any questions regarding this limitation, he should have recontacted Dr. Rohrbacher for clarification rather than disregarding this limitation based on his own lay opinion.

In sum, the ALJ failed to evaluate properly the treating physician's opinion which was error warranting remand.

## CONCLUSION

For the above reasons, Plaintiff's motion for judgment on the pleadings (Dkt. No. 15) is granted, defendant's motion for judgment on the pleadings (Dkt. No. 17) is denied, and the case is remanded for further administrative proceedings.

The Clerk of Court shall take all steps necessary to close this case.

**SO ORDERED.**

Dated:     April 23, 2021
           Buffalo, New York

                                        MICHAEL J. ROEMER
                                        United States Magistrate Judge